UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARTY S. YODER,**

       **Plaintiff,**    :

  v.

**DYLAN J. KING, OSHP #1884**, *et al.*,    :

       **Defendants.**

**Case No. 2:20-cv-2079**
**Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants Ohio State Highway Patrol Troopers Dylan King, Joshua Zaugg, and Charles McDonnell's Partial Motion to Dismiss (Partial Mot. to Dismiss, ECF No. 6). Plaintiff Marty Yoder has filed a response in opposition (Resp., ECF No. 9), to which the Troopers have replied (Reply, ECF No. 13). This matter is now ripe for review. For the reasons set forth below, the Troopers' Motion is **GRANTED**.

**I.    BACKGROUND**

Mr. Yoder filed suit against the Troopers, each individually and in their official capacities, on April 24, 2020. (Compl., ECF No. 1.) Mr. Yoder's Complaint asserts four claims: the first, for violations of his rights under the Fourth and Fourteenth Amendments including by the use of excessive force and arrest without probable cause (false arrest); the second, for failure to protect or intervene; the third, for conspiracy to violate his civil rights under 18 U.S.C. § 1985; and, the

1

fourth, for conspiracy to violate his civil rights under 18 U.S.C. § 1983. (*Id.*) Mr. Yoder requests compensatory and punitive damages, costs, and injunctive relief. (*Id.*) Since filing his Complaint, Mr. Yoder has withdrawn his § 1985 claim and his official capacity claims for injunctive relief. (Resp., 6, 9.)

Mr. Yoder's claims are based on allegations that are, at once, disturbing and disheartening. On April 26, 2018, Mr. Yoder visited a Walmart in Cambridge, Ohio. (Compl., ¶ 2.) While there, Mr. Yoder "blacked out" and fell, hitting his head. (*Id.*, ¶ 29.) He declined medical attention at the time, and left the store. (*Id.*) While driving home on I-77, Mr. Yoder experienced a second medical event, which impaired his ability to drive. (*Id.*, ¶ 2.) Mr. Yoder swerved out of the Northbound lane, crossed the median, and continued into the Southbound lane. (*Id.*) Although he avoided a head-on collision with oncoming traffic, Mr. Yoder "side-swiped" a tractor trailer before coming to a stop on the side of the highway. (*Id.*, ¶ 4.) Mr. Yoder's driver's-side door was "pinned" against the guardrail. (*Id.*, ¶ 26.) His car was "wrecked" and "immobile," the front driver's-side wheel having been ripped from its axle in the collision. (*Id.*, ¶ 25.) A witness to the accident pulled off the road, and—in this story's only display of compassion—asked Mr. Yoder if he was alright. (*Id.*, ¶ 27.) Mr. Yoder did not respond, but sat buckled into his seat, staring straight ahead, not talking, but with a cellphone to his ear. (*Id.*)

Troopers King, Zaugg, and McDonnell arrived to the scene separately. (*Id.*, ¶ 39.) Trooper King arrived first. (*Id.*) He conferred with the witness, and knocked on Mr. Yoder's window. (*Id.*, ¶¶ 39, 43.) Mr. Yoder did not respond. (*Id.*, ¶ 43.)

2

Trooper King attempted to open the passenger-side door, but it was locked. (*Id.*, ¶ 45.) He ordered Mr. Yoder to open the door. (*Id.*) Mr. Yoder turned to look at Trooper King, still holding a cell phone to his ear, with a "blank expression" on his face. (*Id.*) Trooper King again ordered Mr. Yoder to open the door, this time striking the window with his flashlight and threatening to smash it if Mr. Yoder did not comply. (*Id.*, ¶ 47.) Trooper King then shattered Mr. Yoder's front passenger-side window with his collapsible baton. (*Id.*) Trooper Zaugg arrived in time to see Trooper King smash the window. (*Id.*, ¶ 55.)

Next, less than three minutes after he arrived on-scene, Trooper King resorted to violence to extract Mr. Yoder from his car. (*Id.*, ¶ 42.) Trooper Zaugg joined him. (*Id.*, ¶ 56.) Troopers King and Zaugg repeatedly deployed their tasers and stun guns on Mr. Yoder. (*Id.*, ¶¶ 51, 56.) Trooper King also rendered several punches, trying to extract Mr. Yoder from the vehicle. (*Id.*, ¶ 52.) And Trooper Zaugg struck Mr. Yoder multiple times on his head, neck, and collar bone. (*Id.*, ¶ 58.)

Trooper McDonnell arrived in the midst of the melee. (*Id.*, ¶¶ 59–61.) Trooper Zaugg was at the driver's-side window, with Mr. Yoder gripping his arm. (*Id.*, ¶¶ 60–61.) Trooper King tased Mr. Yoder, freeing Trooper Zaugg from his grip. (*Id.*, ¶ 62.) Mr. Yoder continued to wave his arm out of the window, this time making contact with Trooper McDonnell's arm. (*Id.*, ¶ 63.) Trooper McDonnell responded by striking Mr. Yoder repeatedly with his baton. (*Id.*, ¶ 64.) Mr. Yoder yelled out, as Trooper McDonnell recalled, "I'm not getting out the goddamned car if it ain't

3

mine." (*Id.*, ¶ 66.) Trooper McDonnell then administered chemical spray into Mr. Yoder's eyes and tased him three times. (*Id.*, ¶¶ 66–67.)

The Troopers ultimately succeeded in extracting Mr. Yoder from his vehicle and placing him under arrest. (*Id.*, ¶ 68.) In the course of their arrest and investigation, the Troopers recovered 0.097 ounces of marijuana from Mr. Yoder's vehicle. (*Id.*, ¶ 6.) Mr. Yoder sustained fractures to his right clavicle and eye socket, among other injuries requiring medical attention. (*Id.*, ¶¶ 58, 90–94.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a

4

cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

III. ANALYSIS

    A. **Mr. Yoder fails to state a claim under the Fourteenth Amendment.**

The Troopers first argue that Mr. Yoder's Fourteenth Amendment claim must fail, because it is properly analyzed under the Fourth Amendment. The Court agrees. The Supreme Court held in the seminal *Graham v. O'Connor*,

> *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process" must be the guide for analyzing these claims.

490 U.S. 386, 395 (1989) (emphasis in original). The Sixth Circuit has since clarified that the boundary between a claim for excessive force used in a warrantless arrest properly brought under the Fourth Amendment, versus the Fourteenth, lies at the probable cause hearing. *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010); *Burgess v. Fischer*, 735 F.3d 462, 474 (6th Cir. 2013). In other words, the Fourth Amendment's "objectively reasonable" standard controls until probable cause has been established, at which point the analysis is properly performed under the Fourteenth Amendment's "shock the conscience" standard. *See Darrah v. City of*

5

*Oak Park*, 255 F.3d 301, 305–06 (6th Cir. 2001) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44, 846 (1998)).

Here, it is undisputed that the Troopers applied the allegedly-excessive force during their attempts to arrest Mr. Yoder. Mr. Yoder was a "free man" prior to the arrest (at least insofar as freedom from restraint by the state). Mr. Yoder does not allege that the Troopers applied <u>any</u> force against him after a hearing to establish probable cause that he committed an offense. It is therefore clear that Mr. Yoder's excessive force claims are properly brought under the Fourth, and not the Fourteenth, Amendment.

Mr. Yoder argues in favor of a contrary result by invoking two Supreme Court decisions, *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) and *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989). The argument is unpersuasive. In *Lewis*, the Supreme Court considered whether a fatality resulting from a high-speed police chase violated the decedent's constitutional rights. The Court considered whether the officers' conduct shocked the conscience (the standard for a violation of substantive due process rights under the Fourteenth Amendment), but <u>*only after*</u> concluding that the case was not properly analyzed under the more specific Fourth Amendment. *Lewis*, 523 U.S. at 833 (syllabus) ("Substantive due process analysis is . . . inappropriate . . . if . . . respondents' claim is 'covered by' the Fourth Amendment. It is not.").

As for *DeShaney*, Mr. Yoder contends that the case stands for the proposition that a "state actor . . . had a duty to protect an injured party [who] was not in state

6

custody at the time of his injuries." (Resp., 3.) Quite the opposite. Instead, the Supreme Court confirmed in *DeShaney* that the state has some duty to provide for the safety and wellbeing of an individual who is involuntarily *in state custody*.[1] *DeShaney*, 489 U.S. at 199–200. But, as the Troopers point out, Mr. Yoder was not in the Troopers' custody at the time the alleged force was used. *See Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) ("The overarching prerequisite for custody is an affirmative act by the state that restrains the ability of an individual to act on his own behalf."). In fact, Mr. Yoder concedes that he was restrained by the positioning of his car against the guardrail; not by the Troopers' application of force. (Compl. ¶ 26; Resp., 4.) The duty recognized in *DeShaney* is, therefore, inapplicable. The Troopers' motion to dismiss Mr. Yoder's Fourteenth Amendment claim is **GRANTED**.

> **B. Mr. Yoder also fails to state a claim for false arrest under the Fourth Amendment.**

The Troopers next argue that Mr. Yoder's claim for false arrest in violation of his Fourth Amendment rights must fail, because the Troopers had probable cause to make the arrest. Again, the Court agrees. The Supreme Court has repeatedly held that "the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citing *Adams v.*

---

[1] This Court is not persuaded, nor does Mr. Yoder argue, that the state-created danger exception, derived from dicta in *DeShaney* and recognized by the Sixth Circuit, applies here. *See DeShaney*, 489 U.S. at 201 ("While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir. 1994).

7

*Williams,* 407 U.S. 143, 148–49 (1972); *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). It is also well-settled that "'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal citations omitted). *See also Estate of Dietrich v. Burrows,* 167, F.3d 1007, 1010–11 (6th Cir. 1999). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). Probable cause requires "only the probability, and not a *prima facie* showing, of criminal activity[.]" *Id.* at 235 (quoting *Spinelli v. United States,* 393 U.S. 410, 419 (1969)).

A showing of probable cause defeats a false arrest claim. *See Stemler v. City of Florence,* 126 F.3d 856, 871 (6th Cir. 1997). The Supreme Court has made clear that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001). Although the high court's *Atwater* decision left open the question of whether an officer may make a constitutionally-sound arrest upon probable cause that a "very minor criminal offense" was committed *outside of his presence*, the Sixth Circuit has unequivocally answered in the affirmative. *Graves v. Mahoning Cty.*, 821 F.3d 772, 778 (6th Cir. 2016) ("[I]t's not an open question at our court. The 'requirement that a misdemeanor must have occurred in the officer's presence to

8

justify a warrantless arrest,' we have explained, 'is not mandated by the Fourth Amendment.'") (quoting *United States v. Smith*, 73 F.3d 1414, 1416 (6th Cir. 1996)).

Here, the Troopers had probable cause to arrest Mr. Yoder. It is a misdemeanor offense, under Ohio law, to "drive[] over, across, or within" a highway median. Ohio Rev. Code Ann. § 4511.35. The Troopers found Mr. Yoder on the wrong side of the highway, having side-swiped an oncoming truck and collided with the guardrail. That alone established probable cause sufficient to effectuate an arrest under the Fourth Amendment.[2] The Troopers' motion to dismiss Mr. Yoder's Fourth Amendment false arrest claim is **GRANTED**.

### C. Mr. Yoder's § 1983 civil conspiracy claim is barred by the intra-corporate conspiracy doctrine.

The Troopers next argue that Mr. Yoder's civil conspiracy claim under 18 U.S.C. § 1983 is barred by the intra-corporate conspiracy doctrine. The Troopers also argue that the claim is inadequately pled. But, because the Court finds that the claim is indeed barred by the intra-corporate conspiracy doctrine, it need not and does not address the sufficiency of the pleadings.

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). "[I]f all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Johnson v. Hills & Dales Gen. Hosp.*, 40

---

[2] The Troopers argue that their discovery of marijuana in Mr. Yoder's car established still more probable cause justifying his arrest. However, it is unclear from the Complaint when and how the marijuana was found. Because the Court finds that the Troopers had probable cause to arrest merely by the position of Mr. Yoder in his vehicle on the wrong side of the highway, it need not address the sufficiency of this argument.

9

F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991)) (alteration in original). The Sixth Circuit has determined that this concept, referred to as the intra-corporate conspiracy doctrine, "applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). The intra-corporate conspiracy doctrine does not bar a claim "where the defendants were alleged to have been acting outside the scope of their employment." *Id.* at 819 (citing *Johnson*, 40 F.3d at 841). Thus, the doctrine acknowledges "a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place"—in other words, "where the aim of the conspiracy exceeds the reach of legitimate corporate activity." *Johnson*, 40 F.3d at 840.

Here, the Troopers are each, undisputedly, employed by the Ohio State Highway Patrol. They assert that their response to Mr. Yoder's accident, and their subsequent investigation and arrest, were well within the course and scope of their employment, such that the intra-corporate conspiracy doctrine applies, and that Mr. Yoder has not alleged any facts which might indicate otherwise. Mr. Yoder, on the other hand, argues that his Complaint alleges that the Troopers abused their police powers and violated his constitutional rights, thereby placing their actions outside the course and scope of their employment. Mr. Yoder does not provide any legal

10

authority in support of his conclusion. But, as the Troopers rightly point out, injurious conduct is not *per se* outside the course and scope of employment because it violates the victim's constitutional rights. *See Brown v. Beaudry*, No. 2:19-cv-140, 2019 WL 3927424, at *4 (W.D. Mich. Aug. 20, 2019) (dismissing plaintiff's § 1983 civil conspiracy claim against corrections officers when he "allege[d] no facts suggesting that [d]efendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties" while allowing his Eighth Amendment claims to remain). *Cf. Norfleet v. City of Memphis*, No. 05-cv-02452-D/V, 2005 WL 2600218, at *2–3 (W.D. Tenn. Oct. 12, 2005) (dismissing plaintiff's § 1985 civil conspiracy claim against police officers while allowing his Fourth Amendment excessive force claim to remain). The Troopers' motion to dismiss Mr. Yoder's § 1983 civil conspiracy claim is **GRANTED**.

> **D.**     **Mr. Yoder's official capacity claims are also barred.**

Finally, the Troopers argue that Mr. Yoder's claims against them in their official capacities are barred by the Eleventh Amendment. Once more, the Court agrees. The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State." U.S. Const. Amend. XI. As to the scope of Eleventh Amendment, the Sixth Circuit directs:

> This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens. The amendment also bars suits for monetary relief against state officials sued in their official capacity.

11

*Thiokol Corp. v. Dep't of Treas.*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted). *See also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining that official-capacity suits are treated as a suit against the employing governmental entity, which is the "real party in interest"); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (same). Accordingly, Mr. Yoder's claims against the Troopers in their official capacities for money damages are barred. Mr. Yoder has withdrawn his official capacity claims for prospective injunctive relief. As such, the Troopers' motion to dismiss Mr. Yoder's official capacity claims is **GRANTED**.

## IV.  CONCLUSION

For the reasons set forth above, the Troopers' Partial Motion to Dismiss is **GRANTED**. Mr. Yoder's Fourteenth Amendment claim, Fourth Amendment false arrest claim, § 1983 civil conspiracy claim, and official capacity claims are **DISMISSED** with prejudice. Mr. Yoder's remaining claims are unaffected by this ruling.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

12